Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4390 | **DATE** | 2/18/2003 |
| **CASE TITLE** | CONTINENTAL INSURANCE CO. vs. M/V DAVIKEN, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Defendants motion (4-1, 5-1, 16-1) to dismiss is granted. Motion (33-1) to strike is denied. Enter amended memorandum opinion and order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | FEB 20 2003 | |
| | Notices mailed by judge's staff. | | date docketed | 39 |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| DW | courtroom deputy's initials | 03 FEB 19 PM 2:15 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

CONTINENTAL INSURANCE COMPANY as Subrogee OF J&F STEEL CORPORATION,

Plaintiff,

v.

M/V DAVIKEN, her engines, boilers, etc., FEDNAV INTERNATIONAL LTD., FEDNAV LTD., and VIKEN LAKERS A/S,

Defendants.

No. 02 C 4390 (Consolidated with 02 C 4391 and 02 C 4392)

Judge James B. Zagel

DOCKETED
FEB 2 0 2003

## AMENDED MEMORANDUM OPINION AND ORDER

Three cases are consolidated here.

**02 C 4390**

The case is brought, under admiralty and maritime jurisdiction, by Continental Insurance Company ("Continental") (as subrogee of J & F Steel Corporation) over claimed damage to steel coils shipped aboard the M/V *Daviken* from Ghent, Belgium to Burns Harbor, Indiana. The shipment, pursuant to several bills of lading, arrived on April 7, 2001, and was discharged from the vessel on that and the following day.

Fednav International, Ltd. ("FIL") moves to dismiss because it says the complaint comes too late. The Carriage of Goods by Sea Act (COGSA), 46 U.S.C. §§ 1300, has a one-year statute of limitations which starts running on the day of delivery. The Bills of Lading specifically subjected the shipment to COGSA where the port of discharge was in this country and set forth the one-year limit. This suit was filed on June 19, 2002–over one year after delivery. Moreover, the Bills of Lading had a forum selection clause denoting the District having admiralty



jurisdiction of the port of discharge (or the port of loading, but this is not relevant here) as the only place where suit could be brought. Thus, the case should have been brought in the Northern District of Indiana. In short, FIL argues that the case should be dismissed because it was filed late and in the wrong court.

Defendant Viken Lakers A/S ("Viken") makes the same argument and adds the ground that it entered into no contracts of the carriage of goods, acted solely as a disclosed agent for and on behalf of a disclosed principal FIL and therefore, cannot be liable.

No appearance has been filed on behalf of the vessel and jurisdiction over the vessel is denied.

## 02 C 4391

The case is brought, under admiralty and maritime jurisdiction, by Continental over claimed damage to steel coils shipped aboard the M/V *Federal Rideau* from Ghent, Belgium to Burns Harbor, Indiana. The shipment, pursuant to several bills of lading, arrived on July 2, 2001, and was discharged from the vessel on that day and the following three days.

FIL moves to dismiss because it says the complaint was filed in the wrong court. The Bills of Lading had a forum selection clause denoting the District having admiralty jurisdiction of the port of discharge (or the port of loading, but this is not relevant here) as the only place where suit could be brought. Thus, the case should have been brought in the Northern District of Indiana.

Federal Oceans Ltd. ("FOL") makes the same argument and adds the ground that it entered into no contracts of the carriage of goods, acted solely as a disclosed agent for and on behalf of a disclosed principal FIL and therefore, cannot be liable.

No appearance has been filed on behalf of the vessel and jurisdiction over the vessel is denied.

**02 C 4392**

The case is brought, under admiralty and maritime jurisdiction, by Continental over claimed damage to steel coils shipped aboard the M/V *Orsula* from Ghent, Belgium to Burns Harbor, Indiana. The shipment, pursuant to several bills of lading, arrived on April 23, 2001, and was discharged from the vessel on that and the following day. FIL argues that the case must be dismissed for filing in the wrong court. The Bills of Lading had a forum selection clause denoting the District having admiralty jurisdiction of the port of discharge (or the port of loading, but this is not relevant here) as the only place where suit could be brought. Thus, the case should have been brought in the Northern District of Indiana.

No appearance has been filed on behalf of the vessel and jurisdiction over the vessel is denied. In addition, no appearance has been filed for another defendant Atlant Adria Corp.

**Motions to Dismiss**

A single response is filed to all motions to dismiss.

Continental asked for and received an extension of suit time. The heading of the Fednav Ltd. (the agent of defendants who seek dismissal) document contains the following:

> Re: M/V DAVIKEN, Voy 4/01
> At Burns Harbor April 7-8, 2001
> Bs/L SP502-566
> Alleged rust and physical damage to steel coils
> Amount of claim: US$700,000.00 estimated.

The document from Fednav states that:

> [o]n behalf of vessel owner and Fednave International Ltd. as time chartere, we agree to extend time, on a strict without prejudice basis, **up to and including July 6, 2002**, subject to your providing us with complete claims supporting

documents within thirty days of today [March 27, 2002]. This extension shall be considered expired and the claim absolutely time barred as of July 7, 2002 unless further extension is granted.

Continental sent something to Fednav on April 3. What is in dispute is whether this was "complete claims supporting documents." The cover letter sent by Continental had a section called Claim Detail. It read:

| | | | |
|---|---|---|---|
| Vessel: | DAVIKEN | Dated: | 15-Mar-01 |
| Bill of Lading: | SP 502-566 | Port of Discharge: | Burns Harbor |
| Port of Shipment: | Gent | Consignee: | J & F Steel |
| Shipment: | Steel Coils | Shipper: | Transaf |
| Nature of Loss: | Rust & Physical | | |
| Your File: | AG/49/01 | | |
| Our File: | 71000968 | | |

Attached to the cover letter were a series of documents. A letter from a marine surveyor suggested $700,000 in damage and indicated that more damage may arise from the damage to 19 unused coils, and there are other letters and documents that refer to the damage. The documents do not detail the number of damaged coils, the time or location that damage was discovered or its extent, the loss per coil or, for that matter, the identity of the damaged coils. Moreover, the damage claim is now $834,939.87 instead of $700,000.

More specific information was sent April 8, arguably enough to constitute complete claim information, but it was accompanied by a cover letter that referred to a separate and much smaller claim for other steel coils. The defendants say that these materials therefore do not count, and I agree. No one disputes that, for good reasons, Fednav assigns different claim numbers to different claims even when they arise from the same shipment. I have no doubt that Fednav examined both the April 3 and the April 8 papers, but they were not obliged to consider the April 8 papers in connection with the April 3 claim, which bore a different number. It is not

4

unreasonable to impose on Continental the burden of specifying clearly what papers are to be considered in connection with what claims.

But the parties do not, in the end, part company on this issue. The reason that it is raised is that defendants moved to strike an affidavit on the grounds, among others, that it was an attempt to mislead the court into thinking that the April 8 documents were crucial. I do not think, in the context of this case, it was designed to or could reasonably be expected to mislead, so I deny the motion to strike and disregard those portions of the affidavit that express merely legal conclusions. What Continental sought to do in its opening brief was to rely upon the later filed documents but it lost, and to my eye, concedes that it lost, that point. Making an argument that fails is not an attempt to mislead the court.

Continental is thus stuck with its April 3 response, but it argues that defendants cannot rely on the alleged shortcomings of the documents because they never defined what it was that they wanted. In short, "complete claims documents" is an ambiguous term. If Fednav had wanted more, it should have said so if it was dealing fairly and in good faith as it was required by law to do. So the questions are whether the phrase is ambiguous, and if so, whether the duty to deal in good faith required Fednav to clarify it since it was the author of the phrase.

No one offers much evidence (but we are only at the motion to dismiss stage) that "complete claims documents" has a standard meaning within this area of commercial practice. A federal regulation defines supporting documents as "affidavits, correspondence, bills of lading, paid freight bills, export declaration, dock or wharf receipts, or of such other documents as, the judgment of the claimant, tend to establish the claim." 46 C.F.R. § 502.1. But I am not sure it applies in the context where the carrier of goods is asked to extend the time for suit–a decision remitted solely to the carrier. There is evidence that Fednav itself may not have had a clear

understanding of its meaning. Fednav itself did not defend its position on the meaning of the phrase. Its correspondence blamed its own insurers for the position it took and weakly said "we see no reason to disagree with our insurer's position." And, though the plaintiff here extends this argument to an unconvincing extreme, the fact remains that defendants here had several different definitions of "complete claim documents" over a period of time. I accept the proposition that the phrase here was ambiguous.

The next phase of the argument is the disagreement over who should bear the consequences of this ambiguity. There is, of course, the doctrine of contra preferentum which cuts against the defendants because it is they who insisted on "complete claims documents," but the ambit of this doctrine is quite narrow–it is a last step tie breaker to be used only after all other attempts at correct interpretation have failed, and there is no better tie breaker.

One tie breaker suggested by the defendants is that plaintiff knew what the phrase meant because it provided complete claims documents in another claim case filed at about the same time. It never asked Fednav if it considered the documents complete. And it did have complete claims documents (by Fednav's reckoning) in its possession well before the thirty-day filing period ended.

The plaintiff uses the mirror image of this argument by asserting that Fednav never told it that it had any problem with the documents. It simply kept silent until it was too late to repair whatever defects Fednav thought were present.

By my understanding of the law, the plaintiff should lose this argument. It was the claimant, and it had the obligation to determine that it had met the conditions set by defendants–particularly in a case where the defendants had the legal right to refuse to extend the limitations period and remit plaintiff to filing the suit. Interestingly enough, case law articulating

this appears not to exist, the absence of which could very well be indicative of its obvious correctness. However, there is also a holding from the Fifth Circuit that works against the plaintiff, which is that the burden lies with the claimant "to say exactly what it seeks, rather than for the carrier, against its self-interest, to say what the claimant deserves." *Salzstein v. Bekins Van Lines, Inc.*, 993 F.2d 1187, 1190 (5th Cir. 1993).

To escape this position, Continental argues that it was prevented from complying with the condition precedent by the conduct of Fednav. When one is prevented from compliance by the entity that laid down the condition, the courts will excuse non-compliance. It is too much of a reach to characterize Fednav as preventing anything here. To fail to warn Continental that it is not in compliance is not to prevent it from complying with the condition. "Failure to apprise," to use Continental's phrase, is not to prevent Continental from doing anything. Had Continental asked Fednav if it thought it had complete claims documents and Fednav had said yes, there would be a good argument under the prevention doctrine, perhaps even more so, if Fednav had said it did not know, although a prudent claimant would, upon receiving that answer, file every piece of paper it had with Fednav (and perhaps have filed suit anyway).

The end result is that I do not reach contra proferentum. However ambiguous the terms may have been, it was open to Continental to clarify them and to comply with them or to file suit within the one-year statutory limitation period. As claimant, it was its burden to pursue these avenues. It may be true that it would have received contradictory answers from Fednav and, had this been the case, its legal arguments here may well have carried the day, but this is a hypothesis, not a fact, so I do not address it.

This brings us to the argument that the suit is filed in the wrong place--the sole grounds for dismissal in 4391 and 4392. The contract provided that suit should be filed in the District

7

Court having admiralty jurisdiction at the USA port of discharge. All the documents said the port of discharge was Burns Harbor (neé Burns Ditch) which I take judicial notice is located in Indiana. Burns Harbor is, by Executive Order, located within the Port of Chicago and Continental argues that suit in this District is fine. This depends in turn on reading the term "USA port of discharge" to be ambiguous. What Continental suggests is that the clause should have read "District Court having admiralty jurisdiction at the USA port of discharge in the State of Indiana." This is an argument against the standardized bills of lading used in this and other transactions. The carrier would have to fill in a blank representing the expected state of jurisdiction of the intended port of discharge and, of course, leave uncovered the issue of where suit should be brought if, as it sometimes happens, the intended port of discharge is not the actual port of discharge. The fact that the forum selection clause could have been more specific does not mean it is ambiguous. I think the meaning here is clear and the clause required the suit to be brought in Indiana. I would not regard the useful legal and commercial fiction that Burns Harbor is in Chicago as rendering the plain vanilla language of the bill of lading ambiguous.

The only way that the 4391 and 4392 suits can survive is if the appropriate remedy for filing in the wrong court is dismissal which ends the suits because the time for filing has expired or transfer to the proper venue which would allow the suits to survive.

I think that transfer is unjustified. There was nothing so obscure about which forum should have been selected here that would justify giving plaintiffs a second chance to proceed in the correct court. At the very least, it could have filed suits both here and in Hammond, Indiana just a few miles from this courthouse and sorted out venue later. What happened here was the kind of incorrect filing from the consequences of which plaintiffs should not be excused under jurisprudence of *Cote v. Wadel*, 796 F.2d 981, 984-85 (7th Cir. 1986). I recognize the filing flaw

8

addressed in *Cote* and in *Hapaniewski v. City of Chicago Heights*, 883 F.2d 576 (7th Cir. 1989) is arguably more fundamental than the flaw here. In those cases the filing was in a court which lacked personal jurisdiction over defendant. Here, the flaw is failure to honor a forum selection clause. But I think the reasoning in *Cote* must apply to filings in breach of forum selection clauses, particularly in a case in which all parties are commercially sophisticated and familiar with the forms of litigation in which they engage.

The motion to dismiss is granted.

ENTER:

James B. Zagel
United States District Judge

DATE: 18 February 2003